IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| MEIA RABOTEAU, Individually and as Parent and Legal Guardian of M. L., a minor<br>15559 Fancy Farm Court<br>Manassas, Virginia 20112 | * * * | |
| Plaintiff | * | |
| v. | * | Civil Action No.: |
| FREDERICK MEMORIAL HOSPITAL, INCORPORATED, d/b/a FREDERICK MEMORIAL HEALTHCARE SYSTEM<br>400 W. Seventh Street<br>Frederick, MD 21701<br>SERVE ON:<br>    Thomas A. Kleinhanzl<br>    400 W. Seventh Street<br>    Frederick, MD 21701 | * * * * * | MJG10CV721 |
| and | * | |
| JOAN KELLY, M.D.<br>400 W. Seventh Street<br>Frederick, MD 21701 | * * | |
| and | * | |
| KATHERINE WHITE, M.D.<br>400 W. Seventh Street<br>Frederick, MD 21701 | * * | |
| Defendants | * | |

* * * * * * * * * * * *

## COMPLAINT

Plaintiff, Meia Raboteau, Individually and as Parent and Legal Guardian of M. L., sues the Defendants, the Frederick Memorial Hospital, Inc., Joan Kelly, M.D., and Katherine White, M.D., and for cause, states as follows:

1

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and the Plaintiff and Defendants are citizens of different states.

2. Venue is proper in this jurisdiction because the causes of action all arose in Maryland, and each of the Defendants regularly conducts business in the State of Maryland.

3. That the amount of the claim exceeds the concurrent jurisdiction of the District Court of Maryland.

4. That the claim is ripe for determination in this Court as an action was timely instituted in the Health Claims Alternative Dispute Resolution Office, and a waiver was filed pursuant to § 3-2A-06B of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland. See Exhibit "A".

## Parties

5. That at all times hereinafter set forth, Plaintiff Meia Raboteau was the mother and legal guardian of M. L., a minor, and was empowered and responsible for making health care decisions on behalf of M. L., and was responsible for medical expenses incurred by M. L. Plaintiff Meia Raboteau is further authorized as M. L.'s representative to file legal claims on his behalf.

6. That at all times hereinafter set forth, the Defendant, the Frederick Memorial Hospital, Inc., d/b/a Frederick Memorial Healthcare System, was and is a medical facility offering medical and other related services to the general public and in such capacity such hospital, its agents, servants and/or employees, medical staff and consultants held themselves out as practicing ordinary standards of medical, hospital and nursing care and, as such, owed a duty

to the Plaintiff to render and provide health care within the ordinary standards of medical, hospital and nursing care, and to exercise reasonable skill and care in the selection of its personnel to provide competent physicians, surgeons, anesthesiologists, technicians, nurses and other medical personnel, possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine, and to supervise and provide its patients with diagnostic and medical services and treatment commensurate with the condition from which the patient suffers and for which patient entered said hospital.

7. That at all times hereinafter set forth, the Defendant, Joan Kelly, M.D., held herself out to the Plaintiffs, and to Meia Raboteau specifically, as well as to the general public, as an experienced, competent, and able physician and Defendant, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine, and as such owed a duty to Meia Raboteau to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of pediatrics and neonatology.

8. That at all times hereinafter set forth, the Defendant, Katherine White, M.D., held herself out to the Plaintiffs, and to Meia Raboteau specifically, as well as to the general public, as an experienced, competent, and able physician and Defendant, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine, and as such owed a duty to Meia Raboteau to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of pediatrics and neonatology.

9. That at all times relevant to the Complaint, all of the physicians, nurses, and other

health care professionals who attended to M. L. were acting as the agents, servants and/or employees of Frederick Memorial Hospital, Inc.

10. On or about August 5, 2007 at approximately 4:50 p.m., Meia Raboteau presented to Frederick Memorial Hospital in Frederick, Maryland at 28 to 29 weeks gestation. Ms. Raboteau is a "Life Flight" nurse who presented to Frederick Memorial Hospital after transporting a patient to Frederick Airport and experiencing a spontaneous rupture of membranes.

11. Prior to August 5, 2007, Ms. Raboteau had received regular prenatal care with her obstetrician in her home town of Fairfax, Virginia. Ms. Raboteau had experienced a normal and unremarkable prenatal course through the time of M. L.'s delivery.

12. On or about August 5, 2007 at approximately 5:15 p.m., Meia Raboteau was admitted for monitoring in the labor and delivery unit, with medical therapy initiated to delay delivery of her baby. The initial plan of care for Ms. Raboteau included contacting her regular obstetrician in Fairfax, Virginia and transfer to Fairfax Hospital when, and if, she was stabilized and able to be transported.

13. Meia Raboteau was placed on electronic fetal monitoring for continuous assessment of fetal heart rate and variability. The fetal heart rate monitoring was normal and reassuring through the time of delivery at approximately 1:35 p.m. on August 6, 2007.

14. M. L. was delivered at approximately 1:35 p.m. on August 6, 2007. The delivery was unremarkable, other than a "loose nuchal cord" that was "easily reduced." M. L.'s APGAR scores at birth were 5 and 7, respectively. The cord blood gas studies obtained at delivery were also normal. The delivering obstetrician immediately handed M. L. to the attending neonatologists, Defendants Kelly and White.

15. At delivery, M. L. cried spontaneously, displayed normal spontaneous movement, and maintained a normal heart rate of greater than one hundred (100) beats per minute. He was intubated at approximately 2 minutes of life by Dr. White for a developing irregular and ineffective respiratory pattern. Upon information and belief, Dr. White required three (3) attempts to intubate M. L.

16. After intubating M.L., Dr. White requested the nursing staff to turn on the oxygen tank. However, the subject oxygen tank was either broken or empty, and it failed to deliver the required oxygen that M. L. required. Dr. White repeatedly asked the nursing staff to turn on the oxygen, to no effect. After one of the nurses speculated that the subject tank might have been broken, Dr. White ordered the nursing staff to "get the key" to exchange oxygen tanks. The hospital staff then relocated M. L. in the delivery room to allow for manual oxygenation with a bag and mask attached to a wall unit. Dr. White then began to vigorously oxygenate M. L. with a manual bag and mask.

17. M. L. was wrapped up and shown to Ms. Raboteau prior to transport to the NICU. During this time, the hospital staff exchanged oxygen tanks on the isolette used to transport M. L. to the NICU with Dr. Kelly providing manual ventilation en route. M. L. arrived in the NICU at approximately 2:00 p.m., or 25 minutes after delivery.

18. From the time of delivery until his arrival in the NICU, the attending Defendants, including physicians and nurses, failed to monitor M. L.'s heart rate or oxygen saturation.

19. *The Frederick Memorial chart for M. L. contains no contemporaneous notes from any treating physician or nurse as to what transpired between the five-minute APGAR at 1:40 p.m. and Mason's arrival in the neonatal intensive care unit (NICU) approximately twenty (20) minutes later at 2:00 p.m.*

20. On arrival in the NICU, M. L.'s heart rate had decreased to thirty-four (34) beats per minute and he was cyanotic. He was receiving oxygen via hand bagging through an endotracheal tube, and his abdomen appeared "very full."

21. A chest x-ray for M. L. was obtained thirty-three minutes after his arrival in the NICU, at 2:33 p.m. The results of the chest x-ray were reported to the NICU at 2:41 p.m. and revealed the presence of bilateral pneumothorax.

22. The bilateral pneumothorax caused M. L.'s chest to fill with air and compromised his ability to oxygenate vital organs, including his heart and brain.

23. At approximately 2:45 p.m., Dr. White needled M. L.'s right side chest and evacuated a large amount of air. Dr. Kelly performed a similar procedure for M. L.'s left side chest. Dr. White then inserted a chest tube in M. L.'s right chest. M. L. experienced immediate improvement in heart rate and color.

24. A blood gas drawn five (5) minutes after the right chest tube was placed was abnormal, and revealed that M. L. had sustained a mixed respiratory and metabolic acidosis.

25. Ultimately, M. L. was diagnosed with hypoxic ischemic encephalopathy, otherwise described as brain damage associated with oxygen deprivation at or near the time of birth.

## COUNT I
### (Negligence)

26. Plaintiff adopts and incorporates by reference all of the allegations set forth in paragraphs 1 through 25 of the Complaint as fully as if they were set out at length herein.

27. At all times relevant hereto, Meia Raboteau and her infant son, M. L., were patients of the named Defendants, who acting directly and through their agents and employees, were under a duty to provide proper, adequate, timely and acceptable medical care and treatment

to them.

28. That Defendant Kelly and Defendant White were assigned by Frederick Memorial Hospital to assess, evaluate, monitor, and treat M. L. at the time of his birth on August 6, 2007.

29. That the named Defendant defendants deviated from and breached the generally accepted standards of medical care by negligently, carelessly and recklessly failing to properly diagnose and treat M. L.'s medical condition; by failing to properly monitor M. L. from the time of delivery until his arrival in the NICU; failing to maintain medical equipment in proper working order; failing to order tests and procedures in a timely manner to diagnose and treat the bilateral pneumothorax; failing to intervene in a timely manner to relieve the accumulated air in M. L.'s chest, and by otherwise failing to properly diagnose and treat M. L..

30. As a direct and proximate result of the aforesaid negligence of the Defendants, the infant M. L. has suffered severe and permanent injury, including, but not limited to, hypoxic ischemic encephalopathy, seizure disorder, cerebral palsy, mental retardation, developmental delays, and other medical conditions and disabilities requiring ongoing medical care, therapies, medical devices, and special education.

31. The negligence of the Defendants was the proximate cause and contributed to the damages sustained to the infant M. L. and the damages sustained by his Parent and Legal Guardian, Meia Raboteau.

32. As a direct and proximate result of the injury sustained, M. L. and his mother/guardian have and will continue to incur substantial medical and other related expenses.

33. As a direct and proximate result of the negligence and breach of standards of care by the Defendants, the infant M. L. was caused to suffer severe and permanent injury, has been forced to undergo extensive medical treatment and will continue to undergo medical treatment,

has been prevented from performing normal activities and has suffered and will continue to suffer physical pain, mental anguish and humiliation and suffer from permanent disability.

WHEREFORE, the Plaintiff, Meia Raboteau, Individually and as Parent and Legal Guardian of M. L., demands judgment against the Defendants, Frederick Memorial Hospital, Joan Kelly, M.D., and Katherine White, M.D., in excess of the concurrent jurisdiction of the District Court of Maryland, and for interest, fees, and costs, and such further relief as this Court deems just and appropriate.

ROSEN & WARSHAW, LLC

*/s/ Michael S. Warshaw*
Michael S. Warshaw
Federal Bar ID #09588
26 South Street
Baltimore, Maryland 21202
(410) 244-1155

Attorneys for Plaintiffs

### JURY DEMAND

Plaintiffs demand a trial by jury of all issues triable to a jury in this matter.

*/s/ Michael S. Warshaw*
Michael S. Warshaw
Federal Bar ID #09588